

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, | Civil Action No. 1:11-cv-00565 |
| Plaintiff, | Judge: Virginia M. Kendall |
| vs. | Magistrate Judge: Michael T. Mason |
| FXOPEN INVESTMENTS INC., | |
| Defendant. | |

## [PROPOSED] CONSENT ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF AND PENALTIES AGAINST DEFENDANT FXOPEN INVESTMENTS INC.

### I.    BACKGROUND

On January 26, 2011, Plaintiff Commodity Futures Trading Commission ("CFTC" or "Commission") filed a Complaint for Injunctive and Other Equitable Relief and Penalties Under the Commodity Exchange Act ("Complaint") against Defendant FXOpen Investments Inc. ("FXOpen") seeking injunctive and other equitable relief and penalties for violations of the Commodity Exchange Act ("Act"), as amended by the Food, Conservation and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008 ("CRA")), §§ 13101-13204, 122 Stat. 1651 (enacted June 18, 2008), to be codified at 7 U.S.C. §§ 1 *et seq.*, and Commission Regulations ("Regulations"), 17 C.F.R. §§ 1.1 *et seq.* (2010).

### II.    CONSENTS AND AGREEMENTS

To effect settlement of the matters alleged in the Complaint against FXOpen without a trial on the merits or any further judicial proceedings, FXOpen, by and through its attorneys of record:



1.    Consents to entry of this Consent Order for Permanent Injunction and Other Equitable Relief and Penalties Against Defendant FXOpen Investments Inc. ("Consent Order");

2.    Affirms that FXOpen's consent to entry of this Consent Order is voluntary and that no promise or threat has been made by the Commission or any member, officer, agent, or representative thereof to induce it to consent to entry of this Consent Order, other than as specifically contained herein;

3.    Acknowledges service of the Complaint and summons;

4.    Admits, solely for the purposes of settlement, to the Commission's jurisdiction over FXOpen in this action pursuant to Section 2(c)(2) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2);

5.    Admits, solely for the purposes of settlement, to the jurisdiction of this Court over FXOpen in this action pursuant to Section 6c(a) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 13a-1(a);

6.    Admits that venue properly lies with this Court pursuant to Section 6c(e) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 13a-1(e), and 28 U.S.C. § 1391(d) (2006);

7.    Waives:

    A.    any and all claims that FXOpen may possess under the Equal Access to Justice Act, 5 U.S.C. § 504 (2006) and 28 U.S.C. § 2412 (2006), and/or Part 148 of the Regulations, 17 C.F.R. §§ 148.1-30 (2010), relating to, or arising from, this action;

    B.    any and all claims that FXOpen may possess under the Small Business Regulatory Enforcement Fairness Act of 1996, Pub. L. 104-121, §§ 201-253, 110 Stat. 857, 857-868 (1996), as amended by Pub. L. 110-28, § 8302, 121 Stat. 204-205 (2007), relating to, or arising from, this action;

    C.    any and all claims of Double Jeopardy based upon the institution of this proceeding or the entry in this proceeding of this Consent Order or any

2



> order imposing restitution, a civil monetary penalty, or any other relief; and

> D.      all rights of appeal from this Consent Order;

8.      Neither admits nor denies the findings of fact and conclusions of law contained in Parts III and IV of this Consent Order;

9.      Agrees that neither FXOpen nor any of its agents or employees under its authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or the findings of fact or conclusions of law in this Consent Order, or creating or tending to create the impression that the Complaint or this Consent Order is without a factual basis; provided, however, that nothing in this provision shall affect FXOpen's: (a) testimonial obligations; or (b) right to take legal positions in other proceedings to which the Commission is not a party. FXOpen shall take all steps necessary to ensure that all of its agents and employees understand and comply with this agreement:

10.     Agrees that no provision of this Consent Order shall in any way limit or impair the ability of any other person or entity to seek any legal or equitable remedy against FXOpen in any other proceeding;

11.     Agrees to provide notice to the Commission in the manner required by Part X of this Consent Order of any bankruptcy proceeding filed by, on behalf of, or against FXOpen, whether inside or outside the United States; and

12.     Consents to the continued jurisdiction of this Court for the purposes of enforcing the terms and conditions of this Consent Order and for any other purposes relevant to this action, even if FXOpen now or in the future resides outside this District.

3



## III.     FINDINGS OF FACT

### A.     Parties to this Consent Order

13.     Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with administering and enforcing the Act, as amended by the CRA and by the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act"), Pub. L. No. 111-203, Title VII (the Wall Street Transparency and Accountability Act of 2010), §§ 701-774, 124 Stat. 1376 (enacted July 21, 2010), to be codified at 7 U.S.C. §§ 1 *et seq.,* and the Regulations, 17 C.F.R. §§ 1.1 *et seq.* (2010).

14.     Defendant **FXOpen Investments Inc.** is an offshore company that solicits and accepts orders for off-exchange foreign currency ("forex") transactions. FXOpen has never been registered with the Commission in any capacity.

### B.     Jurisdiction and Venue

15.     The Commission has jurisdiction over the forex transactions at issue in this action pursuant to Section 2(c)(2) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2).

16.     This Court has jurisdiction over FXOpen and the subject matter of this action pursuant to Section 6c(a) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 13a-1(a), which authorizes the Commission to seek injunctive relief in a U.S. district court against any person whenever it shall appear that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder, and grants such court jurisdiction to entertain such action.

17.     Venue properly lies with this Court pursuant to Section 6c(e) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 13a-1(e), because FXOpen transacts business in this District and certain transactions, acts, practices, and courses of business alleged in the

4



Complaint occurred, are occurring, or are about to occur within this District. Furthermore, an alien may be sued in any judicial district. 28 U.S.C. § 1391(d) (2006).

**C.     The Commission Enacted New Regulations Effective October 18, 2010**

18.     Effective October 18, 2010, the Commission enacted new regulations implementing certain provisions of the Act, as amended by the CRA and the Dodd-Frank Act, with respect to off-exchange forex transactions.

**D.     FXOpen's Solicitations and Forex Transactions**

19.     At least between October 18, 2010 and the filing of the Complaint ("relevant period"), FXOpen solicited potential customers in the United States, including in this District, and globally to open leveraged forex trading accounts and trade forex, including through its main website, www.fxopen.com, and other websites it maintained, all of which were available to the general public.

20.     At least during the relevant period, FXOpen's websites were hosted on servers located in Dallas, Texas; Seattle, Washington; and Washington, D.C.

21.     At least during the relevant period, FXOpen made available to potential customers United States-based telephone numbers and a United States-based fax number on the "Contact Us" page of the www.fxopen.com website, which enabled FXOpen to solicit and service customers in the United States.

22.     At least during the relevant period, potential customers could apply to open leveraged forex trading accounts with FXOpen through the www.fxopen.com website, and "United States" was provided as an option under the "Country" drop-down menu in the address section of the application that potential customers were required to complete.

23.     Through its website, which was available to customers in the United States, FXOpen solicited potential customers in the United States to open leveraged forex trading

5



accounts with FXOpen, and the website contained certain statements that, by doing business with FXOpen, United States customers would not be subject to United States laws and regulations. For example, on October 5, 2010, in response to a question in the "Forum" section of the www.fxopen.com website regarding whether FXOpen could accept United States applicants after the new Commission regulations took effect October 18, 2010, an FXOpen representative answered, "Since we don't have an office in the US, nor are we an affiliate of a US based broker, we are not bound by CFTC rulings. Rest assured we will be able to accept US clients for the foreseeable future unless a legal impediment appears." This representation remained available to the public throughout the relevant period. On February 14, 2010, in a discussion thread regarding proposed Commission leverage regulations in the same "Forum" section, an FXOpen representative stated, "We would like to assure you that FXOpen is not compliant to these laws, as we are not a US entity" and signed his posting, "Taki & the FXOpen team." In a February 15, 2010 response to that post, another FXOpen representative stated: "Of course the new law got passed. They hid it inside an innocuous 'farm' bill. [D]ebate on it would have been minimal at best. Good news for FXOpen. We will welcome all of the new US clients into our company."

24.    At least during the relevant period, FXOpen solicited or accepted orders from individuals with total assets of less than $5 million.

25.    At least during the relevant period, FXOpen customer account agreements stated, "FXOpen will engage in foreign exchange contracts transactions with Customer in accordance with Customer's oral, written, or electronic instructions. FXOpen will act as the counter-party to the Customer in all such transactions."

26.    At least during the relevant period, FXOpen offered and entered into forex transactions with its customers on a leveraged or margined basis.

6



27.　At least during the relevant period, FXOpen's forex transactions typically remained open from day to day and ultimately were offset without any party to the transactions making or taking delivery of foreign currency or otherwise becoming subject to an obligation to do so.

28.　At least during the relevant period, FXOpen's forex transactions were executed off-exchange and not executed, traded on, or otherwise subject to the rules of a designated contract market or registered derivatives transaction execution facility.

29.　At least during the relevant period, FXOpen was not a (aa) financial institution; (bb) broker or dealer registered under the Securities Exchange Act of 1934 or an associated person thereof; (cc)(AA) registered futures commission merchant; (dd) insurance company; (ee) financial holding company; or (ff) investment bank holding company, as described in Section 2(c)(2)(B)(i)(II) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(B)(i)(II).

## IV.　CONCLUSIONS OF LAW

**A.　Summary**

30.　On September 10, 2010, the Commission published a new, comprehensive regulatory scheme to implement provisions of the Act, as amended by the CRA and the Dodd-Frank Act, for off-exchange forex transactions with members of the retail public. Regulation of Off-Exchange Retail Foreign Exchange Transactions and Intermediaries, 75 Fed. Reg. 55,410 (Sept. 10, 2010). This regulatory scheme became effective October 18, 2010.

31.　As detailed below, the new regulatory scheme required that a person offering to be, or acting as, the counterparty to certain retail forex transactions register with the Commission as a retail foreign exchange dealer ("RFED"). *Id.*

7



32.     As detailed below, the Court finds that FXOpen solicited or accepted orders from certain United States customers or potential United States customers in connection with certain retail forex transactions and acted as the counterparty to retail forex transactions with certain persons, all without being properly registered with the Commission as is required by the Act, as amended by the CRA, and the Regulations.

**B.      FXOpen Solicited or Accepted Orders From Non-Eligible Contract Participants**

33.     At least during the relevant period, FXOpen solicited or accepted orders from persons who were not "eligible contract participants" ("ECPs"), which are defined by Section 1a of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 1a, in relevant part as individuals with total assets in excess of (i) $10 million; or (ii) $5 million and who enter the transactions to manage the risk associated with assets owned or liabilities incurred, or reasonably likely to be owned or incurred, by the individuals.

**C.      FXOpen Offered or Entered Into Forex Transactions Described in Section 2(c)(2)(C)(i) of the Act, as Amended by the CRA**

34.     At least during the relevant period, FXOpen offered or entered into forex transactions described in Section 2(c)(2)(C)(i) of the Act, as amended by the CRA, to be codified at 7 U.S.C. § 2(c)(2)(C)(i), which includes forex transactions "offered to, or entered into with, a [non-ECP]" on a "leveraged or margined basis" unless the "counterparty, or the person offering to be the counterparty, of the [non-ECP] is a person described in any of item (aa), (bb), (dd), (ee), or (ff) of subparagraph (B)(i)(II)" while excluding contracts of sale that "result[] in actual delivery within 2 days" or that otherwise "create[] an enforceable obligation to deliver between a seller and buyer that have the ability to deliver and accept delivery, respectively, in connection with their line of business."

8



**D.     FXOpen Offered or Entered Into Retail Forex Transactions**

35.     At least during the relevant period, FXOpen offered or entered into "retail forex transactions," which are defined in Regulation 5.1(m), 17 C.F.R. § 5.1(m) (2011), as "any account[s], agreement[s], contract[s] or transaction[s] described in section 2(c)(2)(B) or 2(c)(2)(C) of the Act" while expressly excluding forex transactions executed, traded on, or otherwise subject to the rules of a designated contract market or registered derivatives transaction execution facility.

**E.     FXOpen Acted as a Retail Foreign Exchange Dealer**

36.     At least during the relevant period, FXOpen acted as an RFED, which is defined by Regulation 5.1(h)(1), 17 C.F.R. § 5.1(h)(1) (2011), as "any person that is, or that offers to be, the counterparty to a retail forex transaction, except for a person described in sub-paragraph (aa), (bb), (cc)(AA), (dd), (ee) or (ff) of section 2(c)(2)(B)(i)(II) of the Act." These exceptions pertain to certain United States financial institutions, brokers and dealers registered under the Securities Exchange Act of 1934 and associated persons thereof, registered futures commission merchants, insurance companies, financial holding companies, and investment bank holding companies and do not apply to FXOpen.

**F.     FXOpen Violated Regulation 5.3(a)(6)(i)**

37.     Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2011), took effect on October 18, 2010 and requires RFEDs, as defined by Regulation 5.1(h)(1), to be registered as RFEDs.

38.     At least during the relevant period, FXOpen acted as an RFED but failed to register with the Commission as an RFED. Accordingly, FXOpen violated Regulation 5.3(a)(6)(i).



**G.      FXOpen Violated Section 2(c)(2)(c)(iii)(I)(aa) of the Act, As Amended by the CRA**

39.      Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended by the CRA, to be codified at

7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), provides that a person, unless registered with the Commission

pursuant to the Regulations, shall not "solicit or accept orders from any [non-ECP] in connection

with agreements, contracts, or transactions described in clause (i) of this subparagraph entered

into with or to be entered into with a person who is not described in item (aa), (bb), (dd), (ee), or

(ff) of subparagraph (B)(i)(II)."

40.      At least during the relevant period, FXOpen was not registered with the

Commission as an RFED as required by Regulation 5.3(a)(6)(i), yet it solicited or accepted

orders from non-ECPs in connection with forex transactions described in Section 2(c)(2)(C)(i) of

the Act, as amended by the CRA, and these forex transactions were entered into with persons

who were not (aa) financial institutions; (bb) brokers or dealers registered under the Securities

Exchange Act of 1934 or associated persons thereof; (dd) insurance companies; (ee) financial

holding companies; or (ff) investment bank holding companies, as described in Section

2(c)(2)(B)(i)(II) of the Act, as amended by the CRA.  FXOpen, which acted as the counterparty

to its forex transactions, is not one of the persons exempt from Section 2(c)(2)(C) of the Act, as

amended by the CRA (*i.e.*, a financial institution, registered broker-dealer, insurance company,

financial holding company, or investment bank holding company).  Accordingly, FXOpen

violated Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended by the CRA.

**H.      Permanent Injunctive and Other Equitable Relief and Penalties Under the Act Are
         Warranted**

41.      FXOpen has engaged, is engaging, or is about to engage in acts and practices that

violate Section 2(c)(2)(C)(iii)(I)(aa) of the Act, as amended by the CRA, to be codified at

7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa), and Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2011).



42.     Unless restrained and enjoined by this Court, there is a reasonable likelihood that
FXOpen will continue to engage in the acts and practices alleged in the Complaint or in similar
acts and practices that violate the Act and Regulations. Furthermore, the nature of FXOpen's
violations and the need to deter others from committing similar violations of the Act and
Regulations warrants the imposition of a civil monetary penalty. The imposition of ancillary
equitable relief is also necessary to carry out the objectives of the Act and Regulations.

## V.     PERMANENT INJUNCTION

THE PARTIES AGREE AND IT IS HEREBY ORDERED THAT:

43.     FXOpen, all persons insofar as they are acting in the capacity of FXOpen's
officers, agents, servants, employees, and attorneys, and all persons insofar as they are acting in
active concert or participation with FXOpen who receive actual notice of this Consent Order by
personal service or otherwise, are permanently restrained, enjoined, and prohibited from directly
or indirectly:

A.     Engaging in any conduct in violation of Section 2(c)(2)(C)(iii)(I)(aa) of
the Act, as amended by the CRA, to be codified at 7 U.S.C.
§ 2(c)(2)(C)(iii)(I)(aa), including, but not limited to, soliciting or accepting
orders from any United States customer or potential United States
customer who is a non-ECP in connection with forex transactions without
registering with the Commission; and

B.     Engaging in any conduct in violation of Regulation 5.3(a)(6)(i), to be
codified at 17 C.F.R. § 5.3(a)(6)(i), including, but not limited to, offering
to be the counterparty to United States customers' forex transactions
without registering with the Commission.

## VI.     FXOPEN WEBSITES

IT IS FURTHER ORDERED THAT:

44.     FXOpen and all persons insofar as they are acting in the capacity of FXOpen's
officers, agents, servants, employees, and attorneys shall within three days of the date of entry of
this Consent Order publish on all websites owned or otherwise maintained by FXOpen,



including, but not limited to, www.fxopen.com, a prominently displayed notice stating, "FXOpen does not provide services for United States customers" ("Website Notification").

45.     FXOpen, all persons insofar as they are acting in the capacity of FXOpen's officers, agents, servants, employees, and attorneys, and all persons insofar as they are acting in active concert or participation with FXOpen who receive actual notice of this Consent Order by personal service or otherwise, are permanently restrained, enjoined, and prohibited from directly or indirectly contradicting, in any manner whatsoever, the Website Notification.

46.     The provisions contained in Part VI of this Consent Order shall remain in effect unless and until FXOpen properly registers with the Commission.

### VII.     LIQUIDATION OF UNITED STATES CUSTOMER ACCOUNTS

**IT IS FURTHER ORDERED THAT:**

47.     FXOpen and all persons insofar as they are acting in the capacity of FXOpen's officers, agents, servants, employees, and attorneys shall:

> A.     Within three days of the date of entry of this Consent Order, deliver electronically to all United States customers the following notice ("Customer Notification"):
>
>> On January 26, 2011, the Commodity Futures Trading Commission ("CFTC") filed a Complaint against FXOpen Investments Inc. ("FXOpen") in the United States District Court for the Northern District of Illinois ("District Court"). The Complaint alleges that FXOpen failed to register with the CFTC as a retail foreign exchange dealer prior to engaging in certain forex transactions in violation of certain provisions of the Commodity Exchange Act and CFTC Regulations.
>>
>> FXOpen has consented to an Order of the District Court not to conduct such business regulated by the Commodity Exchange Act and CFTC Regulations without properly registering with the CFTC in violation of the Commodity Exchange Act and CFTC Regulations. This requires, among other things, that FXOpen liquidate your open positions and close your account.

<div align="center">12</div>



Therefore, in 10 days ("Liquidation Date"), FXOpen will liquidate all open positions in your account at closing prices on the Liquidation Date as determined by a third party source agreed upon by the CFTC and FXOpen and immediately thereafter close your account, unless you liquidate your open positions and close your account prior to the Liquidation Date.

B.    Ten days after delivery of the Customer Notification ("Liquidation Date"), liquidate all remaining open positions in United States customers' accounts at closing prices on the Liquidation Date as determined by a third party source agreed upon by the CFTC and FXOpen and immediately thereafter close all open United States customers' accounts such that no further forex trading can be executed in such accounts;

C.    Within three days of either the Liquidation Date or the date on which a United States customer liquidates open positions prior to the Liquidation Date, return to each United States customer all funds from such customer's account(s) in the same manner in which funds were received by FXOpen from such customer; and

D.    Transfer any funds not able to be returned to United States customers into an escrow account held for the benefit of United States customers ("Escrow Account"), to be distributed according to further order of this Court.

48.    Failure to follow the procedures contained in Part VII of this Consent Order shall be considered prima facie evidence that FXOpen is in contempt of court.

## VIII.    CERTIFICATION OF COMPLIANCE

IT IS FURTHER ORDERED THAT:

49.    Within twenty days of the date of entry of this Consent Order, FXOpen shall deliver to the Commission in the manner required by Part X of this Consent Order a written certification that it has complied with the requirements contained in Parts VI and VII of this Consent Order. Such certification shall further include:

A.    A list of all websites on which the Website Notification has been published;

B.    A copy of all websites showing the Website Notification;

13



C.  A list of all United States customers to whom the Customer Notification was delivered, including name, account number, date of delivery, and means of delivery;

D.  A list of all United States customer accounts, including name, account number, email address, phone number, and mailing address, in which FXOpen liquidated open positions from the Customer Notification delivery date to and including the Liquidation Date, along with the net realized gain or loss on the liquidated positions, the final balance of each account, the total amount of funds returned, and the means by which funds were returned; and

E.  A list of all United States customers, including name, account number, email address, phone number, and mailing address, for which FXOpen transferred funds to the Escrow Account, including a description of the attempt(s) made to return funds to each customer and the amount of funds transferred to the Escrow Account for each customer.

## IX.    CIVIL MONETARY PENALTY

**IT IS FURTHER ORDERED THAT:**

50.    Upon the date of entry of this Consent Order, FXOpen is hereby liable for, and a judgment is entered against FXOpen to pay, a civil monetary penalty in the amount of $140,000 plus post-judgment interest ("CMP Obligation").

51.    Post-judgment interest shall accrue on the civil monetary penalty beginning on the date of entry of this Consent Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Consent Order pursuant to 28 U.S.C. § 1961.

52.    FXOpen shall pay the CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, the payment shall be made payable to the Commodity Futures Trading Commission and sent to the following address:

14



Commodity Futures Trading Commission
Division of Enforcement
ATTN: Accounts Receivables – AMZ 340
E-mail Box: 9-AMC-AMZ-AR-CFTC
DOT/FAA/MMAC
6500 S. MacArthur Blvd.
Oklahoma City, OK 73169
Telephone: (405) 954-5644

If payment by electronic funds transfer is chosen, FXOpen shall contact Linda Zurhorst or her successor at the address above to receive payment instructions and shall fully comply with those instructions. FXOpen shall accompany payment of the CMP Obligation with a cover letter that identifies FXOpen and the name and docket number of this proceeding. FXOpen shall simultaneously transmit a copy of the cover letter and the form of payment to: (1) the Director, Division of Enforcement, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581; and (2) the Chief, Office of Cooperative Enforcement, Division of Enforcement, Commodity Futures Trading Commission, at the same address.

## X. NOTICES

**IT IS FURTHER ORDERED THAT:**

53. All notices required to be given by this Consent Order shall be filed electronically with the Court and/or sent via certified mail, return receipt requested, as follows:

Notice to Plaintiff Commission:

Director of the Division of Enforcement
Commodity Futures Trading Commission
Three Lafayette Centre
1155 21st Street NW
Washington, D.C. 20581

and

Stephanie Reinhart and Joseph Konizeski, Trial Attorneys
Division of Enforcement
Commodity Futures Trading Commission
525 W. Monroe St.
Suite 1100
Chicago, IL  60661

Notice to Defendant FXOpen:

FXOpen Investments Inc.
C/O Jeffry M. Henderson
Henderson & Lyman
175 W. Jackson Blvd.
Suite 240
Chicago, IL  60604

## XI.    CONTINUING JURISDICTION OF THIS COURT

**IT IS FURTHER ORDERED THAT:**

54.    This Court shall retain jurisdiction over this action to implement and carry out the terms of this Consent Order, to ensure compliance with this Consent Order, and for any suitable application or motion for additional relief within the jurisdiction of this Court.

## XII.    MISCELLANEOUS PROVISIONS

**IT IS FURTHER ORDERED THAT:**

**A.    Entire Agreement and Amendments**

55.    This Consent Order incorporates all of the terms and conditions of the settlement between the Commission and FXOpen.  Nothing shall serve to amend or modify t his Consent Order in any respect whatsoever, unless it is:  (1) reduced to writing; (2) signed by all parties hereto; and (3) approved by order of this Court.

**B.    Invalidation**

56.    If any provision of this Consent Order or the application of any provision to any person or circumstance is held to be invalid, the remainder of the Consent Order and the



application of the provision to any other person or circumstance shall not be affected by such holding.

## C.    Waiver

57.    The failure of any party hereto at any time to require performance of any provision hereof shall in no manner affect the right of such party at a later time to enforce the same or any other provision of this Consent Order. No waiver in one or more instances of the breach of any provision contained in this Consent Order shall be deemed to be or construed as a further or continuing waiver of such breach or waiver of the breach of any other provision of this Consent Order.

## D.    Counterparts and Execution

58.    This Consent Order may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties and delivered (by facsimile, email, or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Consent Order that is delivered by facsimile or email shall be deemed for all purposes as constituting good and valid execution and delivered by such party of this Consent Order.

## E.    Authorization

59.    Denis Peganov hereby warrants that he is the director of FXOpen, that this Consent Order has been duly authorized by FXOpen, and that hehas been duly empowered to sign and submit this Consent Order on behalf of FXOpen.


**IT IS SO ORDERED.**


17



Date: _Dec. 22,_, 2011                                                            
Virginia M. Kendall
United States District Judge

CONSENTED TO AND APPROVED BY:

Date: _7 November_, 2011                                          
Jeffry M. Henderson
Henderson & Lyman
175 W. Jackson Blvd.
Suite 240
Chicago, IL 60604
Counsel for Defendant

Date: November 4th, 2011                                        
Denis Peganov, Director on behalf of Defendant

Date: _November 7_, 2011                                        
Stephanie Reinhart
Senior Trial Attorney
Commodity Futures Trading Commission
525 W. Monroe St.
Suite 1100
Chicago, IL 60661
Counsel for Plaintiff

18